## A. H. BLADES v. THE STATE.

### No. 2351. Decided January 29, 1902.

**1.—Tenpin Alley—Exhibiting—Charge.**

On an information charging only the exhibiting a tenpin alley, brought under the Act of 1901 (General Laws, Twenty-seventh Legislature, page 267) a charge to convict, if the jury believed that defendant was "keeping" or exhibiting said alley for betting, etc., was not erroneous where the proof showed that defendant was both the keeper and exhibitor and the same was an act continuous in its nature.

**2.—Same—What Is.**

"If a tenpin alley is kept or exhibited for the purpose of gaming, that is, if the table fees, or alley fees, or money, or anything of value is bet thereon, it comes within the prohibition of the law. And where the exhibitor sold betters a chance in a knife,—the best roller to get the knife, or its money value,—and the proprietor got his money out of the profits on the knives, this was a violation of the law and punishable thereunder.

Appeal from the County Court of Hunt. Tried below before Hon. R. D. Thompson, County Judge.

Appeal from a conviction of exhibiting a ten pin alley for gaming purposes; penalty, a fine of $25 and ten days imprisonment in the county jail.

The opinion states the case.

*Evans & Elder,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted under an information for exhibiting a tenpin alley for the purpose of gaming, and his punishment assessed at a fine of $25 and confinement in the county jail for ten days; hence this appeal.

The information charges and the proof shows that the offense was committed on the 12th day of July, 1901; consequently the conviction was since the law of 1901 went into effect, the Legislature having adjourned on the 9th day of April, 1901, and the law took effect ninety days after adjournment. See Gen. Laws 27th Leg., p. 267. Evidently the law above alluded to was made in view of the holding of this court in Rutherford v. State, 39 Texas Criminal Reports, 137. The act in question makes the keeping or exhibiting, for the purpose of gaming, of any tenpin alley, an offense, and same shall be considered as used for gaming if the table fees or alley fees or money or anything of value is bet thereon, regardless of whether said alley is licensed by law or not. The Rutherford case, as stated before, turned on the proposition that a game of tenpins had been licensed by law, and was subject to an occupation tax. Appellant contends that the court committed an error in charging the jury to convict appellant, if they believed he was engaged in keeping or exhibiting said alley for betting, etc., whereas the information did not

charge him with keeping, but merely with exhibiting said alley. While it is true keeping and exhibiting may be two distinct offenses, and one may be guilty of keeping and not of exhibiting, or vice versa, still the uncontroverted proof here shows that appellant was both the keeper and exhibitor. Appellant was the owner of the alley, and the same was run by him prior to the new law going into effect. He suspended operations on the 8th of July, but on the 10th resumed again. He had full control of the alley, and had a license to run it. If there was any question as to his keeping the alley or as to his exhibiting the same, then appellant's contention that the court ought not to have charged on keeping might be sound. There is no question that both his keeping and exhibiting was not manifested by a single act, but same was continuous in its nature. One might display or exhibit a bank or game of tenpin alley by a single act; but in keeping he must do more than this. Appellant is shown to have both kept and exhibited the tenpin alley. However, it is strenuously contended by him that the same was not kept or exhibited for the purpose of gaming; that is, he insists, under the authority of Stearns v. State, 21 Texas, 692, that the prohibited game, where it is a table or banking game, must be one against the many; that is, the banker or exhibitor against the outsider, as is the case in faro, monte, etc. We do not understand this to be the rule in all prohibited games; but Judge Roberts, in the Stearns case, supra, was merely endeavoring to show that the game of grand raffle was a banking or table game. We quote from the opinion this language: "The characteristic principle or element of the gaming tables or banks specified in the code as faro, monte, etc., is that they have a keeper, dealer, or exhibitor, and operate on the basis of the one against the betters, directly or indirectly. In some of them the principle is obvious, the keeper betting directly against each and all the betters, and they against him, as in faro, vingtun, etc. In others it is disguised and the betters seem to be contending against one another. Such is the case in pool and keno. The keeper charges and takes a percentage upon all the bets that are made, and is therefore interested in stimulating and protracting the betting. The more is bet, the more he makes." And again: "If a party should establish in his house a table for gaming purposes, and carry it on himself, without betting upon it himself, but to enable others to bet (as in pool), and should, instead of charging a percentage upon the bets, depend upon the custom of the betters at his bar to compensate him, the evil would be no less, because he perhaps made less. He might even not be present all the time during the playing, in some such case that might be devised. Here, although, according to the rules of such games, he could not strictly be said to be the keeper or exhibitor, still the community would not be misled by such a change in the mere mode of deriving his gains, and it would be said, 'in common language,' that he kept or exhibited the table."

Now it will be observed from the statute that the game of tenpins is named, and whether or not it be a banking game, as defined or a table game, does not matter. If a tenpin alley is kept or exhibited for the

purpose of gaming,—that is, if the table fees or alley fees, or money, or anything of value, is bet thereon,—it comes within the prohibition of the law. According to the proof, the manner of betting on said tenpin alley was as follows: Appellant would invite people to take a chance in a knife at 10 cents each. He would collect 10 cents each from five persons, and each would roll the balls on the alley, and the one who made the best roll, according to the rules of the game, would be entitled to the knife. He would then give the winner the knife or 35 cents in money, whichever he wanted. The exhibitor sold the betters a chance in the knife, which was to be determined by the parties rolling on the tenpin alley. The man who made the best roll got the knife or the money, and the remainder got nothing. He got his money out of the profits on the knives. He sold the chance in the knife at 10 cents each, and valued the knife at 50 cents. If three men wanted to roll, he would collect 30 cents, and put up a 30-cent knife. If ten men desired to roll, he would put up a $1 knife, and collect $1; that is, 10 cents a chance in each instance. Now, it is evident from this statement that all the parties who rolled on the game were betting against each other the amount which each put up against the chance to win the entire amount; that is, where money was taken instead of the knife, and there were five players, the winner gained or won 50 cents in money, and in that event the exhibitor took 15 cents of the amount, thus getting his profits through the betting and stimulating the game by making it a betting game. The mere fact that he announced and advertised that the alley was not exhibited for gaming was a mere subterfuge, as from the evidence it appears that the sole purpose of his exhibition was to obtain bets from the players, either on knives, or, at the preference of the winner, a part of the money staked on the game.

There being no error in the record, the judgment is affirmed.

*Affirmed.*